IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES N. STRAWSER, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUTHER STRANGE, in his official | ) | Civil Action No. 14-0424-CG-C |
| capacity as Attorney General for the | ) | |
| State of Alabama, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF CERTIFICATION OF PLAINTIFF AND
DEFENDANT CLASSES AND ISSUANCE OF PRELIMINARY INJUNCTION**

# Table of Contents

I.   The Proposed Plaintiff Class is Proper………………………………………8

   A.   The Plaintiff Class Satisfies the Numerosity Requirement
      and Joinder is Impracticable………………………………………8

   B.   The Proposed Plaintiff Class is Properly Defined……………...…………11

II.   The Proposed Defendant Class is Proper……………………………………14

   A.   The Defendant Class Satisfies the Numerosity Requirement
      and Joinder is Impracticable…………..…………………………14

   B.   The Defendant Class's Interests Are Adequately Represented………..15

III.   A Preliminary Injunction Should Issue Without Delay………………..……17

   A.   A Preliminary Injunction Is Necessary to Address
      Ongoing Irreparable Harm to the Class…..………………………17

   B.   The Alabama Supreme Court's Decision Provides No
      Impediment to Issuance of Class-Wide Preliminary
      Relief…………………………………………...……………………19

   C.   Qualified Immunity Does Not Apply…………………..…………….23

   D.   The Eleventh Amendment Does Not Apply………………………....24

   E.   Notice and Hearing Requirements Provide No Bar to
      Issuance of a Preliminary Injunction……….………………………25

## FEDERAL COURT CASES

*Acosta v. James A. Gustino, P.A.,*
  478 F. App'x 620 (11th Cir. 2012) .......................................................................... 22

*Alabama Supreme Court. See Ambrosia Coal & Const. Co. v. Pages Morales,*
  368 F.3d 1320 (11th Cir. 2004) ............................................................................... 22

*Ameritas Variable Life Insurance Company v. Roach,*
  411 F.3d 1328 (11th Cir. 2005) ............................................................................... 22

*Bourke v. Beshear,*
  135 S. Ct. 1041 (2015) .............................................................................................. 8

*Brenner v. Scott,*
  No. 4:14cv107-RH/CAS, 2015 WL 44260 (N.D. Fla. Jan 1, 2015) ......................... 18

*Burford v. Sun Oil Co.,*
  319 U.S. 315 (1943) ................................................................................................. 22

*Carpenter v. Davis,*
  424 F.2d 257 (5th Cir. 1970) .............................................................................. 12, 13

*Chezem v. Beverly Enters.-Texas, Inc.,*
  66 F.3d 741 (5th Cir. 1995) ..................................................................................... 20

*Cnty. of Imperial v. Munoz,*
  449 U.S. 54 (1980) ................................................................................................... 20

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976) ................................................................................................. 22

*Cooper v. Southern Co.,*
  390 F.3d 695 (11th Cir. 2004) ................................................................................. 13

*Cox v. Am. Cast Iron Pipe Co.,*
  784 F.2d 1546 (11th Cir.1986) ................................................................................ 14

*D.W. by M.J. v. Poundstone,*
  165 F.R.D. 661 (M.D. Ala. 1996) ............................................................................. 14

*DeBoer v. Snyder,*
    772 F.3d 388 (6th Cir. 2014) .................................................................... 8

*Johnson v. De Grandy,*
    512 U.S. 997 (1994) ............................................................................... 21

*Doe v. Charleston Area Med. Ctr., Inc.,*
    529 F.2d 638 (4th Cir. 1975) ........................................................... 12, 13

*Evans v. U.S. Pipe & Foundry Co.,*
    784 F.2d 1546 (11th Cir. 1986) .............................................................. 9

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................................... 24

*Fortner v. Thomas,*
    983 F.2d 1024 (11th Cir. 1993) ............................................................ 23

*Hadnott v. Amos,*
    295 F. Supp. 1003 (M.D. Ala. 1968) .................................................... 15

*Hale v. Bimco Trading, Inc.,*
    306 U.S. 375 (1939) ......................................................................... 20, 21

*Harris v. Rainey,*
    299 F.R.D. 486 (W.D. Va. 2014) ...................................................... 11, 12

*Hopson v. Schilling,*
    418 F. Supp. 1223 (N.D. Ind. 1976) ..................................................... 17

*Hutto v. Finney,*
    437 U.S. 678 (1978) ......................................................................... 23, 24

*Ins. Co. of New York v. Chatham Cnty.,*
    547 U.S. 189 (2006) ............................................................................... 24

*Juris v. Inamed Corp.,*
    685 F.3d 1294 (11th Cir. 2012) ............................................................ 25

*LaBauve v. Olin Corp.,*
    231 F.R.D. 632 (S.D. Ala. 2005) ....................................................... 9, 14

*Lance v. Denis,*
  546 U.S. 459 (2006) ............................................................. 22

*Laube v. Haley,*
  234 F. Supp. 2d 1227 (M.D. Ala. 2002) ................................. 18

*Louisiana Power & Light Co. v. City of Thibodaux,*
  360 U.S. 25 (1959) ............................................................... 22

*Mayweathers v. Newland,*
  258 F.3d 930 (9th Cir. 2001) ................................................ 13

*Meyer v. Citizens & S. Nat'l Bank,*
  106 F.R.D. 356 (M.D. Ga. 1985) ........................................... 13

*Munoz v. Cnty. of Imperial,*
  667 F.2d 811 (9th Cir. 1982) ................................................ 20

*Nat'l Broad. Co. v. Cleland,*
  697 F. Supp. 1204 (N.D. Ga. 1988) ...................................... 16

*Neumont v. Monroe Cnty., Fla.,*
  198 F.R.D. 554 (S.D. Fla. 2000) ........................................... 12

*Obergefell v. Hodges,*
  135 S. Ct. 1039 (2015) .......................................................... 8

*Pederson v. La. State Univ.,*
  213 F.3d 858 (5th Cir. 2000) ................................................ 13

*Pelfresne v. Vill. of Williams Bay,*
  917 F.2d 1017 (7th Cir. 1990) .............................................. 20

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,*
  204 F.3d 867 (9th Cir. 2000) ................................................ 20

*Railroad Commission of Texas v. Pullman Co.,*
  312 U.S. 496 (1941) .............................................................. 22

*Redhail v. Zablocki,*
  418 F. Supp. 1061 (E.D. Wis. 1976), *aff'd*, 434 U.S. 374 (1978) ............................ 17

*Sherman ex rel. Sherman v. Twp. High Sch. Dist.,*
  214, 540 F. Supp. 2d 985 (N.D. Ill. 2008) ........................................................ 16, 17

*Sims v. Frink,*
  208 F. Supp. 431 (M.D. Ala. 1962) ................................................................ 15

*Strange v. Searcy,*
  135 S. Ct. 940 (2015) ............................................................................... 18

*Strawser v. Attorney Gen., State of Ala.,*
  No. 15-10313-A (11th Cir. Feb. 3, 2015) ......................................................... 18

*Supreme Court of Va. v. Consumers Union of U. S., Inc.,*
  446 U.S. 719 (1980) ................................................................................. 23

*Susan J. v. Riley,*
  254 F.R.D. 439 (M.D. Ala. 2008) .................................................................. 9

*Tanco v. Haslam,*
  135 S. Ct. 1040 (2015) ............................................................................. 8

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ............................................................................. 14

*Wood v. Strickland,*
  420 U.S. 308 (1975) ................................................................................. 23

*Wright v. Circuit City Stores, Inc.,*
  201 F.R.D. 526 (N.D. Ala. 2001)................................................................... 9

*Younger v. Harris,*
  401 U.S. 37 (1971) ................................................................................... 22

## STATE COURT CASES

*Ashley v. State,*
    19 So. 917 (1896)..................................................................................... 15

*Ex parte State*, — So. 3d —, 2015 WL 892752 (Ala. March 3, 2015) .................. 15, 19

*Kerrigan v. State,*
    38 Conn. L. Rptr. 827, 2005 WL 834296 (Conn. Super. Ct. Mar. 3, 2005)............ 16

## FEDERAL STATUTORY AUTHORITIES

28 U.S.C. § 1983.......................................................................................... 20

28 U.S.C. § 2283.......................................................................................... 20

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P. 23 ........................................................................................ 25

Fed. R. Civ. P. 23(a)(1).................................................................................. 8

Fed. R. Civ. P. 23(c)(2)(A) ........................................................................... 25

## TREATISES

2 William B. Rubenstein, *Newberg on Class Actions* § 5:6 (5th ed. 2012)................ 14

Wright & Miller, *Federal Practice and Procedure* § 1786 (3d ed. 2005).................... 25

In opposition to Plaintiffs' motion for certification of a Plaintiff and Defendant Class and issuance of a class-wide preliminary injunction (Doc. 76), Probate Judge Don Davis and Attorney General Luther Strange again request that this Court allow Defendants to resume their violations of same-sex couples' constitutional rights pending the outcome of the United States Supreme Court's review in *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014), *cert. granted*, 135 S. Ct. 1040 (2015), *cert. granted sub nom.*, *Obergefell v. Hodges*, 135 S. Ct. 1039 (2015), *Tanco v. Haslam*, 135 S. Ct. 1040 (2015), *Bourke v. Beshear*, 135 S. Ct. 1041 (2015). *See* Doc. 78 at 4–5; Doc. 90 at 21; Doc. 99 at 6–7. Alternatively, they argue that the proposed Plaintiff Class lacks numerosity and is vaguely defined, that the Defendant Class is untenable because all 68 probate judges could be individually named and may have differing opinions, that abstention and immunity doctrines bar this Court from issuing an injunction, and that a preliminary injunction cannot issue until all 68 probate judges have been given formal notice and an opportunity to be heard. None of these arguments stands up to scrutiny.

## I.   The Proposed Plaintiff Class is Proper.

### A.   The Plaintiff Class Satisfies the Numerosity Requirement and Joinder is Impracticable.

Despite Defendants' arguments to the contrary (Doc. 90 at 4–6; Doc. 99 at 2–3), the Plaintiff Class easily satisfies the numerosity requirement of Rule 23(a): its members are "so numerous that joinder" of each of them would clearly be "impracticable." FED. R. CIV. P. 23(a)(1). Defendant Davis complains that Plaintiffs cannot "count accurately the number of individuals" in the class (Doc. 90 at 5), but

determining "the precise number of members" is not required. *Evans v. U.S. Pipe &
Foundry Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Instead, "[e]stimates as to the
size of the proposed class are sufficient for a class action to proceed," *Wright v.
Circuit City Stores, Inc.*, 201 F.R.D. 526, 537 (N.D. Ala. 2001) (citations omitted),
and "the court may make 'common sense assumptions' to support a finding of
numerosity." *Susan J. v. Riley*, 254 F.R.D. 439, 458 (M.D. Ala. 2008) (citing *Evans*,
696 F.2d at 930)).

The United States Census shows that Alabama is home to approximately
6,582 same-sex couples. *See* Doc. 76-2. In light of this undisputed data, it would be
unreasonable for this Court to infer that there are fewer than forty individuals—the
number beyond which "[n]umerosity is generally presumed," *LaBauve v. Olin Corp.*,
231 F.R.D. 632, 665 (S.D. Ala. 2005)—in the state who wish to obtain a marriage
license to marry someone of the same sex. *See* Doc. 76, at 6–7. The fact that
"[h]undreds of gays and lesbians married statewide" in Alabama following entry of
this Court's previous orders is further evidence of the Plaintiff Class's numerosity.
Jay Reeves, *With Gay Marriage on Hold, Alabama Judge OKs Lesbian Divorce*,
Tuscaloosa News (Mar. 13, 2015, 2:00 PM), http://bit.ly/1HtMFHA (last visited
March 24, 2015). Indeed, Jefferson County alone issued approximately two hundred
marriage licenses to same-sex couples between February 9 and March 3, 2015. *See*
Declaration of Jackie Rhodes, dated Mar. 23, 2015, attached hereto as Exhibit A.

In addition, other states' experiences confirm that it would be nearly
impossible to individually join every member of the Plaintiff Class. In June 2013,

when the Supreme Court ruled in *United States v. Windsor*, the *Pew Research Center* estimated that at least 71,000 same-sex couples had already married in the eight states for which Pew could obtain data. Drew Desilver, *How Many Same-Sex Marriages in the U.S.? At least 71,165, Probably More*, *Pew Research Center* (June 26, 2013), http://pewrsr.ch/10kUqJF (last visited March 24, 2015). In Florida, 1,233 same-sex couples obtained marriage licenses on January 6, 2015 alone, the first full day in which they were able to do so. Charles Minshew & Andrew Gibson, *Orange County Ranked No. 2 in Same-Sex Marriage Licenses*, Orlando Sentinel (Jan. 7, 2015), http://bit.ly/1xiVUXZ (last visited March 24, 2015). And Utah officials reported issuing more than one thousand marriage licenses to same-sex couples in the first seventeen days after that state's marriage law was declared unconstitutional. *Utah Will Not Recognize Same-Sex Marriages Performed Before High Court Stay*, CNN Political Ticker (Jan. 8, 2014 1:17 PM), http://cnn.it/JI6Pm4 (last visited March 24, 2015). Furthermore, many same-sex couples continue to marry well after their right to do was first recognized in other states. New Hampshire, Vermont, and Connecticut—all states that have allowed same-sex couples to marry since at least 2010 and have considerably smaller populations than Alabama's—issued licenses to 566, 980, and 1,355 same-sex couples respectively in 2013 alone. M.V. Lee Badgett & Christy Mallory, *The* Windsor *Effect on Marriages by Same-Sex Couples*, *The Williams Institute*, 1 (Dec. 2014), http://bit.ly/1Cx57w6 (last visited March 24, 2015). These numbers are unsurprising

in light of the fact that a majority of unmarried lesbian, gay, bisexual, and transgender Americans report a desire to marry someday. Desilver, *supra.*

In sum, census data from Alabama, the number of Alabamians who have already sought licenses to marry a person of the same sex, and other states' experiences all demonstrate that the Plaintiff Class satisfies Rule 23(a)(1)'s numerosity requirement. In a challenge to Virginia's exclusionary marriage laws, a district court relied on data of this kind to certify a class of "all same-sex couples in Virginia who have not married in another jurisdiction" over numerosity objections like those raised by defendants here. *Harris v. Rainey*, 299 F.R.D. 486, 489 (W.D. Va. 2014). The court there concluded that census data and the number of same-sex couples who had sought to marry in another state "amply support[] the conclusion that the number of same-sex couples in Virginia seeking to be married under the laws of the Commonwealth far exceeds any number which would be practical for joinder." *Id.* at 490. Defendants offer no reason why this circumstance warrants a different outcome.

### B.    The Proposed Plaintiff Class is Properly Defined.

Defendants' arguments that the Plaintiff Class is improperly defined similarly fail to withstand scrutiny. The Attorney General asserts that the Plaintiff Class definition is "too vague" and is based on "hopelessly subjective standards." Doc. 99 at 3 (quotation and citation omitted). But if Plaintiffs prevail in their request, probate judges would have no difficulty identifying those affected by the injunction: any two men or two women who appear before them seeking a license to marry one another plainly and objectively qualify as members of a class of "persons

11

in Alabama who wish to obtain a marriage license order to marry a person of the same sex." Doc. 76 at 2. The plaintiff class challenging Virginia's marriage laws was certified over an identical objection that membership in the class depended on "a subjective standard, *i.e.*, each individual's state of mind." *See Harris*, 299 F.R.D. at 489. The court explained that unlike cases in which class membership is "based on unknowable or unascertainable information," "the members of the putative class . . . could be enumerated in the simple manner described above—those same-sex couples who apply for a marriage license." *Id.* at 496.

The fact that there is presently no comprehensive list of class members does not bar certification, because "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained." *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) (affirming certification under Fed. R. Civ. P. 23(b)(2) of class comprising "all who write for, publish, sell or distribute" a newspaper, as well as all "who wish or expect to do so in the future"); *see also Neumont v. Monroe Cnty., Fla.*, 198 F.R.D. 554, 558 (S.D. Fla. 2000) ("[A] class definition is necessary only to establish that the class does, in fact, exist and that its members will be identifiable."). To the contrary, "[w]here the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are not specifically identifiable supports rather than bars the bringing of a class action, because joinder is impracticable." *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975) (holding that district court abused its discretion by failing to certify Fed. R. Civ. P. 23(b)(2) class of women who wish to

have an abortion); *see also Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("Difficulty in identifying class members makes joinder more impractical and certification more desirable.").

Defendant Strange's argument that "anyone can be a member" of the Plaintiff Class "if they later decide they want to be" is a red herring. Doc. 78 at 4. Courts routinely certify classes defined by characteristics that—like the decision to become a couple or to seek a marriage license—involve some element of choice. *See, e.g.*, *Mayweathers v. Newland*, 258 F.3d 930, 933 (9th Cir. 2001) (religion); *Pederson v. La. State Univ.*, 213 F.3d 858, 865 (5th Cir. 2000) (enrolling at a college and seeking to participate in varsity sports); *Carpenter*, 424 F.2d at 260 (desire to write for, publish, or sell a newspaper); *Charleston Area Med. Ctr., Inc.*, 529 F.2d at 645 (decision to seek an abortion). Class certification is just as appropriate here.

Finally, Defendant Davis's contentions that the Plaintiff Class definition does not meet Rule 23's commonality and typicality requirements because some same-sex couples "have no present intention of seeking a marriage license" and because "[t]he specific circumstances of same-sex couples in Alabama, like those of all couples, vary widely," likewise lack merit. Doc. 90 at 7–8. Couples who never seek a marriage license are not members of the Plaintiff Class, and the requested injunction will not require issuance of marriage licenses to couples who do not want them. Moreover, whatever a couple's particular circumstances may be, "factual differences among the claims of the putative class members do not defeat certification." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004). The

13

Plaintiff Class members all have the same legal claims—namely, that the enforcement of Alabama's laws denies them their fundamental rights to marry and to equal protection of the laws under the Fourteenth Amendment. Classwide resolution of these claims "will resolve an issue that is central to the validity of each one of the [plaintiffs'] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

## II. The Proposed Defendant Class is Proper.

### A. The Defendant Class Satisfies the Numerosity Requirement and Joinder is Impracticable.

Defendants Davis and Strange argue that there are "only" 68 probate judges in Alabama and "they could each be joined," so a Defendant Class should not be certified. Doc. 99 at 4; *see also* Doc. 78 at 4; Doc. 90 at 9–10. But even in the context of plaintiff classes—which typically contain more members than defendant classes, *see* 2 William B. Rubenstein, *Newberg on Class Actions* § 5:6 at 415 (5th ed. 2012)— "[n]umerosity is generally presumed when a proposed class exceeds 40 members." *LaBauve*, 231 F.R.D. at 665 (citing cases, including *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)); *see also* Doc. 76, at 6, 15–16.

Nor does the fact that the members of the Defendant Class are identifiable make class certification inappropriate. Class certification is warranted not only where joining every member is "impossible," but also where doing so would be "impractical," a standard that requires "common sense and . . . due consideration to concerns of judicial economy and access to the legal system." *D.W. by M.J. v. Poundstone*, 165 F.R.D. 661, 670 & n.3 (M.D. Ala. 1996), *aff'd*, 113 F.3d 1214 (11th

14

Cir. 1997). Here, certifying a class of probate judges, all of whom have the same ministerial duties with respect to the issuance of marriage licenses but are dispersed throughout the state, serves the interests of judicial economy and allows for full vindication of the constitutional rights of the Plaintiff Class. Accordingly, it is unsurprising that courts routinely certify defendant classes of local or county-level officials in cases—like this one—that challenge a law executed at a local level. *See* Doc. 76, at 14–15 (citing cases). Indeed, federal courts in Alabama have previously certified the very defendant class sought here. *See, e.g.*, *Hadnott v. Amos*, 295 F. Supp. 1003, 1005 (M.D. Ala. 1968) (certifying class of Alabama probate judges), *rev'd on other grounds*, 394 U.S. 358 (1969); *Sims v. Frink*, 208 F. Supp. 431, 432 (M.D. Ala. 1962) (same).

**B.   The Defendant Class's Interests Are Adequately Represented.**

Defendant Davis asserts that he "cannot be an effective class representative because there is no unified position of the 68 probate judges" on the constitutionality of denying marriage licenses to same-sex couples, and because he "has never made public statements or taken a public stance" on the matter. Doc. 90 at 9, 14; *see also* Doc. 99 at 4–5. But the action that the preliminary injunction would require Davis and other probate judges to perform—the issuance of a marriage license—is a purely ministerial act. *Ex parte State*, — So. 3d —, 2015 WL 892752 at *8 (Ala. March 3, 2015) (discussing probate judges' "ministerial act of licensing marriages"); *see also Ashley v. State*, 19 So. 917, 918 (1896) ("The issuance of a marriage license by a judge of probate is a ministerial and not a judicial act.").

In their official capacities, local officials who perform this ministerial act have "no protectable interest in the constitutionality" of the state's marriage laws and "no interest of the merits of the outcome of [a] case" challenging those laws. *Whitewood v. Wolf*, No. 1:13-cv-1861, slip op. at 7 (E.D. Pa. June 18, 2014), *available at* http://1.usa.gov/1FwvowI (last visited March 24, 2015); *see also Kerrigan v. State*, 38 Conn. L. Rptr. 827, 2005 WL 834296, at *4 (Conn. Super. Ct. Mar. 3, 2005).[1]

Even when "local officials . . . disagree as to whether the statewide laws they are charged with enforcing are in fact constitutional," "the common obligation to implement [those laws] gives rise to a common defense," making certification of a defendant class appropriate. *Sherman ex rel. Sherman v. Twp. High Sch. Dist. 214*, 540 F. Supp. 2d 985, 991–92 (N.D. Ill. 2008). Thus, the fact that Davis "has expressed no opinion as to the constitutionality of [a challenged statute]" is no hindrance to his ability to represent the class. *Id.* As an official with "the same duties and responsibilities as all other" Defendant Class members, he "can fairly and adequately protect the interests of the defendant class." *Nat'l Broad. Co. v. Cleland*, 697 F. Supp. 1204, 1217 (N.D. Ga. 1988). Indeed, the individual beliefs of the 68 probate court judges are irrelevant to the legal issues at stake here.

Appointing Davis as a representative of the Defendant Class is especially appropriate here because "any perceived weakness stemming from [his] professed neutrality . . . [is] offset by the inclusion" of another party—Attorney General

---

[1] While the probate judges do not have a legally protectable interest in the marriage laws' constitutionality, they are tasked with the ministerial duty of issuing licenses and therefore are necessary parties for the Plaintiff Class to receive effective relief.

Strange—who is defending the statute's constitutionality. *Sherman*, 540 F. Supp. 2d at 992; *see also Redhail v. Zablocki*, 418 F. Supp. 1061, 1066 (E.D. Wis. 1976) (county clerk is adequate defendant-class representative, particularly where "the Attorney General of Wisconsin has taken an active part in this action, urging that the challenged statute be upheld"), *aff'd*, 434 U.S. 374 (1978); *Hopson v. Schilling*, 418 F. Supp. 1223, 1237 (N.D. Ind. 1976) (local official is adequate defendant-class representative, particularly where "the State of Indiana . . . has intervened as codefendant for the limited purpose of opposing plaintiff's claim as to the unconstitutionality of the statutes on their face"). Here, the Alabama Attorney General has taken an active and forceful role in defending the constitutionality of the challenged marriage laws.

## III.   A Preliminary Injunction Should Issue Without Delay.

### A.   A Preliminary Injunction Is Necessary to Address Ongoing Irreparable Harm to the Class.

This Court's past orders strongly support the conclusion that the Plaintiff Class satisfies the relevant four-factor test for granting a preliminary injunction. This Court has already held that the same constitutional principles that prohibit Defendant Strange from enforcing the Alabama laws that exclude same-sex couples from marriage apply with equal force to the probate judges in the state:

> The preliminary injunction now in effect thus does not require the Clerk to issue licenses to other applicants. But as set out in the order that announced issuance of the preliminary injunction, *the Constitution requires the Clerk to issue such licenses*. As in any other instance involving parties not now before the court, the Clerk's obligation to follow the law arises from sources other than the preliminary injunction.

Order Clarifying Judgment, *Searcy* Doc. 65 at 3 (quoting *Brenner v. Scott*, No. 4:14cv107-RH/CAS, 2015 WL 44260, at *1 (N.D. Fla. Jan 1, 2015)) (emphasis added).

Defendants Davis and Strange claim a preliminary injunction should not issue because the United States Supreme Court will rule on same-sex couples' entitlement to equal treatment in "a few short months." Doc. 78 at 3; *see also* Doc. 99 at 6; Doc. 90 at 3–4, 16. But this Court has previously found that continued enforcement of Alabama's unconstitutional marriage laws would "[i]rreparably [h]arm the [p]laintiffs *and [o]ther [s]ame-[s]ex [c]ouples.*" Order, *Searcy* Doc. 59, at 4 (emphasis added), and both Eleventh Circuit and the United States Supreme Court declined to stay this Court's order when faced with the same arguments. *See Searcy v. Attorney Gen.*, State of Ala., No. 15-10295-C, consolidated with *Strawser v. Attorney Gen., State of Ala.*, No. 15-10313-A (11th Cir. Feb. 3, 2015) (order denying stay pending appeal); *Strange v. Searcy*, 135 S. Ct. 940 (2015) (order denying stay pending disposition of Sixth Circuit cases). If state and local officials are permitted to enforce Alabama's unconstitutional marriage laws for the next several months, same-sex couples in Alabama will suffer irreparable harm in the form of the continued deprivation of their constitutional rights. *Laube v. Haley*, 234 F. Supp. 2d 1227, 1251 (M.D. Ala. 2002) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm.") (citations omitted). As this Court has already held, the continued enforcement of those laws also deprives married same-sex couples of vitally important rights "with respect to adoption, child care and

18

custody, medical decisions, employment and health benefits, future tax implications, inheritance and many other rights associated with marriage." *Searcy Order*, Doc. 59 at 4–5. Those harms are just as severe for the members of the Plaintiff Class and their families as for the existing Plaintiffs.

Finally, this Court has held that the irreparable harm caused by the unconstitutional Alabama laws "outweighs any injury to defendant," and that "it is always in the public interest to protect constitutional rights." Order, Doc. 55 at 6–7 (quotation and citation omitted). Defendants offer no reason why these conclusions do not apply equally to other same-sex couples who are denied the right to marry and to have their marriages recognized. Thus, Plaintiffs seek only to effectuate the fundamental constitutional rights this Court has already recognized.

## B. The Alabama Supreme Court's Decision Provides No Impediment to Issuance of Class-Wide Preliminary Relief.

The Attorney General asserts that this Court should not "increase the tension between State and federal courts" by granting a preliminary injunction." Doc. 99 at 6–7. But under well-settled precedent, the Alabama Supreme Court's decision provides no impediment to the issuance of the class-wide injunction that Plaintiffs seek.

As an initial matter, no ruling by the Alabama Supreme Court can prevent the Plaintiffs from seeking to vindicate their federal constitutional rights in an unrelated federal case or from being granted the relief they seek from this Court. Because the Plaintiffs and members of the Plaintiff Class were not party to the state-court mandamus proceeding, *see Ex parte State*, 2015 WL 892752 at *1, the

couples in the Plaintiff Class are not bound by the conclusions of the Alabama Supreme Court. They may seek, and this Court may issue, an injunction barring probate judges from enforcing Alabama's same-sex marriage ban.

As the United States Supreme Court has made clear, "a successful mandamus proceeding in a state court against state officials to enforce a challenged statute" does not bar "injunctive relief in a United States district court against enforcement of the statute by state officials at the suit of strangers to the state court proceedings." *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 377–78 (1939) (affirming entry of federal injunction directing state officials to cease enforcement of unconstitutional state statute after a state court ordered those state officials to enforce that statute in a mandamus proceeding). To argue otherwise, as the Attorney General does here, "assumes that the mandamus proceeding bound the independent suitor in the federal court as though he were a party to the litigation in the state court. This, of course, is not so." *Id.* at 378. *See also Cnty. of Imperial v. Munoz*, 449 U.S. 54, 59–60 (1980) (holding that federal court was not barred from ordering county officials to cease enforcement of unconstitutional condition in land-use permit despite earlier order of California Supreme Court directing compliance with that condition, provided that the plaintiffs in the federal suit were "strangers" to the state-court proceedings); *Munoz v. Cnty. of Imperial*, 667 F.2d 811, 816–17 (9th Cir. 1982) (holding, following remand from Supreme Court, that federal plaintiffs were strangers to state-court proceedings and affirming entry of injunction against county officials); *Prudential Real Estate Affiliates, Inc. v. PPR*

*Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("One who is not a party to state proceedings, nor in privity with a party, may seek a federal injunction against enforcement of a judgment obtained in those proceedings."); *Chezem v. Beverly Enters.-Texas, Inc.*, 66 F.3d 741, 742 & n.3 (5th Cir. 1995) (same); *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1020 (7th Cir. 1990) (same).

The Anti-Injunction Act, 28 U.S.C. § 2283 (the "Act"), is likewise no bar to the relief Plaintiffs seek. As *Hale* expressly held, the Act has no application under the circumstances of this case, where Plaintiffs are asking the Court to enjoin the enforcement of laws that were found valid in an unrelated state case. 306 U.S. at 377–78. Moreover, even if the Act applied, it would not bar the relief Plaintiffs seek. Under controlling precedent, the Act does not bar federal injunctions that prohibit enforcement of state-court orders when, as in this case, the federal action alleges constitutional claims brought under 28 U.S.C. § 1983. *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972).

Finally, no federal abstention doctrines bar this Court's consideration of Plaintiffs' claims or entry of the relief Plaintiffs seek.[2] Even the Attorney General acknowledges that the *Rooker-Feldman* doctrine, which bars federal-court review of state-court judgments, is inapplicable because "the plaintiffs were not parties to the proceedings in state court." Doc. 99 at 7. *See Johnson v. De Grandy*, 512 U.S. 997,

---

[2] Nor do any other comity-based considerations support the Attorney General's opposition. This Court's decisions in the *Searcy* and *Strawser* cases preceded the action in *Ex parte State*, and the class-wide relief that Plaintiffs seek is necessary to effectuate this Court's determination that the continued enforcement of the unconstitutional marriage laws deprives same-sex couples of fundamental constitutional liberties.

1005–06 (1994); *Lance v. Denis*, 546 U.S. 459, 465–66 (2006). The narrow and discretionary abstention doctrine recognized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–15 (1976), is likewise inapplicable because this case does not involve substantially the same parties as the case before the Alabama Supreme Court. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004); *see also Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012). *Ameritas Variable Life Insurance Company v. Roach*, 411 F.3d 1328 (11th Cir. 2005), does not apply because Plaintiffs were not parties to the state proceeding, and because this Court is not being asked to exercise supplemental jurisdiction over non-diverse parties. *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny do not call for abstention because Plaintiffs are not parties to any parallel state-court proceedings in which their constitutional claims could be resolved. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and similar cases do not apply because there are no ambiguities in the statute for the state courts to resolve that might render it unnecessary for this Court to reach the constitutional issues in this case. Cases such as *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), have no relevance here because this case is not based on diversity jurisdiction and does not involve any complex unsettled matters of state law.

In sum, the decision in *Ex parte State* provides no basis for this Court to abstain from granting the class-wide relief Plaintiffs seek.

## C.    Qualified Immunity Does Not Apply.

Defendant Davis argues that qualified immunity bars any "potential money damages to be awarded in the form of attorney's fees to the plaintiff class" because the rights at stake are not "clearly established." Doc. 90 at 17. But qualified immunity shields individual officers from liability for *damages* in their personal capacities; it does not preclude official-capacity suits seeking to enjoin state and local officials from enforcing an unconstitutional statute, and there is no requirement that the law be clearly established before such relief may be obtained. *See Fortner v. Thomas*, 983 F.2d 1024, 1029 & n.1 (11th Cir. 1993) (quoting *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975)). And attorneys' fees are most decidedly not damages. *See Hutto v. Finney*, 437 U.S. 678, 695 (1978) (Section 1988 "imposes attorney's fees 'as part of the costs,'" quoting 42 U.S.C. § 1988). As the United States Supreme Court has held, "[t]he House Committee Report on the Act indicates that Congress intended to permit attorney's fees awards in cases in which prospective relief was properly awarded against defendants who would be immune from damages awards." *Supreme Court of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 738–39 (1980) (citing H.R. Rep. No. 94-1558, p. 9 (1976)).

Defendant Davis also complains that it would be unfair to ask him to shoulder the burden of any attorney-fee award against the class. Doc. 90 at 9, 15. But while Defendant Davis and Proposed Defendant Russell would be the named defendants, their counties would not necessarily be responsible for payment of any fee award. "Congress recognized that suits brought against individual officers for

injunctive relief are for all practical purposes suits against the State itself. The legislative history makes it clear that in such suits attorney's fee awards should generally be obtained 'either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).'" *Hutto*, 437 U.S. at 700 (quoting S. Rep. No. 94-1011, p. 5 (1976), U.S. Code Cong. & Admin. News 1976, p. 5913). Because this case challenges a state statute, and the Attorney General has been the primary party defending the marriage ban, the Court may determine that this action is one that is, "for all practical purposes, brought against the State," so that the state, rather than individual counties, should be liable for any fee award. *Id.* at 699 (holding that state department of corrections was required to pay attorney's fees under § 1988 even though only prison officials were named as defendants and the department and the state were not parties).

**D.    The Eleventh Amendment Does Not Apply.**

Defendant Davis argues that he and other probate judges are entitled to Eleventh Amendment immunity because they are state officials. Doc. 90 at 20. But it is well settled that the Eleventh Amendment does not immunize state officials from federal constitutional claims that seek injunctive relief. *Ex parte Young*, 209 U.S. 123, 155–56 (1908).[3] Indeed, this Court has already enjoined both Defendants Davis and Strange from enforcing Alabama's marriage ban. The Eleventh

---

[3] Counties and county officials have no Eleventh Amendment immunity whatsoever. *Ins. Co. of New York v. Chatham Cnty.,* 547 U.S. 189, 193 (2006).

Amendment is no bar to the entry of a similar injunction extending to the proposed Plaintiff and Defendant Classes.

### E.  Notice and Hearing Requirements Provide No Bar to Issuance of a Preliminary Injunction.

Defendant Strange argues that "basic notions of due process give Probate Judges the right to notice and a hearing" before this Court issues an injunction. Doc. 78 at 4; *see also* Doc. 99 at 5. In fact, neither the Constitution nor the Federal Rules of Civil Procedure require notice to the members of the Defendant Class. And even if the Court were to require such notice before fully certifying the class, the Court should not delay issuance of preliminary injunctive relief pending provision of that notice.

Because certification of the Defendant Class is sought under Rules 23(b)(1)(A) and 23(b)(2), there is no requirement that class members be notified. *See* FED. R. CIV. P. 23(c)(2)(A). Since classes under these rules "generally will be more cohesive . . . there is less reason to be concerned about each member of the class having an opportunity to be present." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1319 n.23 (11th Cir. 2012) (quoting Wright & Miller, *Federal Practice and Procedure* § 1786 (3d ed. 2005)). "In the degree that there is cohesiveness or unity in the class and the representation is effective, the need for notice to the class will tend toward a minimum." *Id.* (quoting Fed. R. Civ. P. 23 Advisory Committee's Notes to 1966 Amendment).

Here, as Plaintiffs explained in their motion, all individuals in the Defendant Class are subject to the same questions of law and fact and the same legal defenses,

such that the named class representatives would fairly and adequately represent the interests of the Defendant Class as a whole. Doc. 76 at 17–21. Indeed, the action that the preliminary injunction would require probate judges to perform—the issuance of a marriage license—constitutes a purely ministerial act. *See supra* at 9. Defendants Strange and Davis make no showing to the contrary and offer no explanation of why notice to each class member prior to entry of a preliminary injunction is required under these circumstances.

In any event, regardless of whether the Court exercises its discretion to require notice to each member of the Defendant Class, there is no reason to delay ruling on Plaintiffs' request for a class-wide preliminary injunction. Where a *prima facie* showing of the requirements of Rule 23 has been made, courts routinely grant class-wide preliminary relief even before any notice to class members or full-fledged class certification. *See* Doc. 76, at 24–25 (collecting cases). Plaintiffs have made such a showing. The reasons to grant preliminary relief are particularly compelling here, as the Plaintiff Class is being deprived of vital constitutional rights, and the ongoing harms to same-sex couples and their children are severe and pervasive.

In summary, Plaintiffs respectfully request that this Court grant their motion to certify a plaintiff class and a defendant class, and grant a preliminary injunction extending to all Alabama probate judges the same injunctive relief that this Court previously issued against Defendants Strange and Davis—namely, a prohibition on the denial of marriage licenses to same-sex couples on the ground that "it is prohibited by the Sanctity of Marriage Amendment and the Alabama

Marriage Protection Act or by any other Alabama law or Order pertaining to same-sex marriage," and a prohibition on any other enforcement of "the marriage laws of Alabama which prohibit or fail to recognize same-sex marriage." Doc. 55 at 7–8. Attached hereto as Exhibit B is a proposed order granting that requested relief.

Respectfully Submitted,

By: /s/ Shannon P. Minter___

Shannon P. Minter*
Christopher F. Stoll*
National Center for Lesbian Rights
1100 H Street, NW, Suite 540
Washington, DC 20005
Tel: (202) 734-3545
Fax: (415) 392-8442
Email: sminter@nclrights.org
Email: cstoll@nclrights.org

Heather Fann
Boyd, Fernambucq, Dunn & Fann, P.C.
3500 Blue Lake Drive, Suite 220
Birmingham, AL 35243
Tel: (205) 930-9000
Fax: (205) 930-9010
Email: hfann@bfattorneys.net

Randall C. Marshall (MARSR3023)
ACLU Foundation of Alabama
P.O. Box 6179
Montgomery, AL 36106-0179
Tel: (334) 420-1741
Fax: (334) 269-5666
Email: rmarshall@aclualabama.org

David Dinielli**
Cal. Bar No. 177904
Scott D. McCoy*
N.Y. Bar No. 3970803
Southern Poverty Law Center
400 Washington Avenue

Montgomery, AL 36104
Tel: (334) 956-8200
Email: david.dinielli@splcenter.org
Email: scott.mccoy@splcenter.org

Ayesha N. Khan*
D.C. Bar No. 426836
Zachary A. Dietert*
D.C. Bar No. 1003784
Americans United for Separation of Church and
State
1901 L Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 466-3234
Email: khan@au.org
Email: dietert@au.org

*Attorneys for Plaintiffs*

\* Appearing *pro hac vice*
\*\* Motion for admission *pro hac vice* forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on March 24, 2015. I certify that service will be accomplished by the CM/ECF system to the following parties:

Luther Strange
*Attorney General*
Andrew L. Brasher
*Solicitor General*
James W. Davis
Laura Howell
*Assistant Attorneys General*
State of Alabama
Office of Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
Tel: (334) 353-2609

Lee L. Hale (HAL026)
501 Church Street
Mobile, AL 36602
Phone: (251) 433-3671

J. Michael Druhan, Jr. (Druh2816)
Harry V. Satterwhite (Satth4909)
SATTERWHITE, DRUHAN, GAILLARD & TYLER, LLC
1325 Dauphin Street
Mobile, Alabama 36604
(251) 432-8120 (phone)
(251) 405-0147 (fax)
mike@satterwhitelaw.com
harry@satterwhitelaw.com

Mark S. Boardman (ASB-8572-B65M)
Clay R. Carr (ASB-5650-C42C)
Teresa B. Petelos (ASB-8716-L66T)
BOARDMAN, CARR, BENNETT, WATKINS, HILL & GAMBLE, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
Telephone: (205) 678-8000

Attorneys for the Honorable Don Davis,
Judge of the Probate Court of Mobile County, Alabama

29

I hereby certify that the following parties were served via electronic mail and U.S. mail on March 24, 2015:

     Tim Russell - Probate Judge
     220 Courthouse Square (physical location)
     Post Office Box 459 (mailing address)
     Bay Minette, Alabama  36507
     Jodie Smith - Sr. Administrative Assistant
     jsmith@baldwincountyal.gov


                /s/ Scott D. McCoy___