IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES N. STRAWSER, et al.,** ) | |
| ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | **CIVIL ACTION NO. 14-0424-CG-C** |
| ) | |
| **LUTHER STRANGE, in his official** ) | |
| **capacity as Attorney General for** ) | |
| **the State of Alabama, et al.,** ) | |
| ) | |
| ) | |
| **Defendants.** | |

## ORDER

This matter is before the court on Plaintiffs' motion for preliminary injunction (Doc. 76), opposition thereto filed by Attorney General Strange (Doc. 78, 99) and Judge Don Davis (Doc. 90), and Plaintiffs' reply (Doc 100). For the reasons explained below, the Court finds that Plaintiffs' motion for preliminary injunction should be granted, but stayed pending the ruling of the U.S. Supreme Court in Obergefell v. Hodges and related cases.

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court..." Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if the plaintiff demonstrates each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the required injunction may cause the non-moving parties; and (4) the injunction

would not be adverse to the public interest. Id., 287 F.3d at 1329; see also McDonald's Corp. v. Robertson, 147 F.3d. 1301, 1306 (11th Cir. 1998). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion" as to the four requisites." McDonald's Corp., 147 F.3d at 1306; All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)(a preliminary injunction is issued only when "drastic relief" is necessary.)

The claims in this case are brought by persons in Alabama who wish to marry a person of the same-sex and to have that marriage recognized under Alabama law. This court previously issued preliminary injunctions in this case prohibiting the Alabama Attorney General, Probate Judge Don Davis, and their "officers, agents, servants and employees, and others in active concert or participation with any of them who would seek to enforce the marriage laws of Alabama that prohibit same-sex marriage" from enforcing the Alabama laws which prohibit same-sex marriage. (Docs. 29, 55). The first preliminary injunction against Attorney General Luther Strange, was initially stayed, but went into effect on Monday, February 9, 2015, after the Eleventh Circuit Court of Appeals and the Supreme Court of the United States denied Attorney General Strange's request to extend the stay. (Doc. 40, Exh. 1; Doc. 43, p. 2). This Court also denied subsequent requests by Defendants to stay. (Doc. 88). The Court allowed Plaintiffs to amend their complaint to add both named parties and class claims (Doc. 92), and has today certified both a Plaintiff Class and a Defendant Class. Plaintiffs now seek a third

preliminary injunction that would apply to the new named parties and both Plaintiff and Defendant Classes.

The named Plaintiffs report that they are all over the age of 19 and want to get married and feel demeaned and humiliated by Alabama's refusal to treat them on a basis equal to that of opposite sex couples. (Doc.76-3, ¶¶ 1, 3; Doc. 76-4, ¶¶ 1, 3; Doc. 76-5, ¶¶ 1, 5). Plaintiffs Kristie Ogle and Jennifer Ogle have been in a committed, loving relationship for 22 years and have a child who was born in 2002 in Alabama. (Doc. 76-3, ¶ 2). Kristie and Jennifer Ogle want to provide their son and their family with the stability and legal protections that marriage provides. (Doc. 76-3, ¶ e). They experience uncertainty about whether they will be treated as family members in the event of an emergency. (Doc. 76-3, ¶ 3). Kristie and Jennifer Ogle went to Mobile County Probate Court to obtain a marriage license on March 4, 2015, but the Probate Office was not issuing licenses and they were unable to obtain one. (Doc. 76-3, ¶ 4). On March 5, 2015 Kristie Ogle called the Baldwin County Probate Judge's office and was told that while they are issuing marriage licenses to opposite-sex couples, they are not issuing licenses to same-sex couples. (Doc. 76-3, ¶ 4).

Plaintiffs Keith Ingram and Albert Holloway Pigg III have been in a committed, loving relationship for approximately one year. (Doc. 76-4, ¶ 2). Ingram and Pigg want to marry to make their family legal and to declare their commitment for each other before their loved ones and their community. (Doc. 76-4, ¶ 3). Each day that they are not permitted to be married, they experience uncertainty about

whether they will be treated as family members in the event of an emergency. (Doc. 76-4, ¶ 3). They are particularly anxious because Ingram has seen many doctors over the past several months for an undiagnosed illness. (Doc. 76-4, ¶ 3). Ingram and Pigg drove to the probate office in Houston County on February 9, 2015 to obtain a marriage license, but were told by the clerk that the probate judge, Judge Patrick Davenport, would not issue them a marriage license. (Doc. 76-4, ¶ 4). They drove to the Houston County Probate Office again on February 17, 2015 and were again informed that Judge Davenport would not issue them a marriage license. (Doc. 76-4, ¶ 5). On March 5, 2015, Ingram called the office of Baldwin County Probate Judge Tim Russell and asked if they could get a marriage license, but was informed that Judge Russell's office was only issuing marriage licenses to "traditional" different-sex couples. (Doc. 76-4, ¶ 6).

Plaintiffs Gary Wayne Wright II and Brandon Mabrey have lived together in Alabama for six years and have been in a committed, loving relationship for eighteen years. (Doc. 76-5, ¶¶ 1, 2). Wright was honorably discharged from the U.S. Navy in 1991 after 17 years of service for being gay. (Doc. 76-5, ¶ 3). Wright has a muscular disorder that leaves him dependent on a wheelchair. (Doc. 76-5, ¶ 4). Wright receives less veteran's benefits and coverage than he would if he were married. (Doc. 76-5, ¶ 4). Wright and Mabrey want to get married to make their family legal and to declare their commitment to each other before their loved ones and community. (Doc. 76-5, ¶ 5). Each day that they are not permitted to marry, they experience uncertainty about whether they will be treated as family members

in the event of an emergency and they want to receive the legal protections and responsibilities that marriage provides. (Doc. 76-5, ¶ 5). On February 12, 2015, Mabrey called the Marshall County Probate Office, but was told that the office was not issuing marriage licenses to anyone. (Doc. 76-5, ¶ 6). Wright sent an email to Marshal County Probate Judge, Tim Mitchell, on February 18, 2015, requesting that his office issue marriage licenses to same-sex couples, but received no response. (Doc. 76-5, ¶ 7). On March 2, 2015, Wright went to the Marshall County Probate Office to obtain a marriage license and the clerk told him that the probate judge would not issue marriage licenses to anyone. (Doc. 76-5, ¶ 8). On March 5, 2015, they called the Baldwin County Probate Office to ask if they could obtain a marriage license, but were told that the Baldwin County Probate Office was issuing licenses only to "traditional" different-sex couples. (Doc. 76-5, ¶ 9).

Plaintiffs contend that Alabama's laws prohibiting same-sex marriage[1] violate their rights under the United States Constitution to Due Process and Equal

---

[1] The Alabama Sanctity of Marriage Amendment to the Alabama Constitution provides the following:

> (a) This amendment shall be known and may be cited as the Sanctity of Marriage Amendment.
> (b) Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting this unique relationship in order to promote, among other goals, the stability and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.
> (c) Marriage is a sacred covenant, solemnized between a man and a woman, which, when the legal capacity and consent of both parties is

5

Protection. This Court determined, in another case, <u>Searcy v. Strange</u>, 2015 WL

---

> present, establishes their relationship as husband and wife, and which is recognized by the state as a civil contract.
> (d) No marriage license shall be issued in the State of Alabama to parties of the same sex.
> (e) The State of Alabama shall not recognize as valid any marriage of parties of the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction regardless of whether a marriage license was issued.
> (f) The State of Alabama shall not recognize as valid any common law marriage of parties of the same sex.
> (g) A union replicating marriage of or between persons of the same sex in the State of Alabama or in any other jurisdiction shall be considered and treated in all respects as having no legal force or effect in this state and shall not be recognized by this state as a marriage or other union replicating marriage.

ALA. CONST. ART. I, § 36.03 (2006).

The Alabama Marriage Protection Act provides:

(a) This section shall be known and may be cited as the "Alabama Marriage Protection Act."

> (b) Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting the unique relationship in order to promote, among other goals, the stability and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.
>
> (c) Marriage is a sacred covenant, solemnized between a man and a woman, which, when the legal capacity and consent of both parties is present, establishes their relationship as husband and wife, and which is recognized by the state as a civil contract.
> (d) No marriage license shall be issued in the State of Alabama to parties of the same sex.
> (e) The State of Alabama shall not recognize as valid any marriage of parties of the same sex that occurred or was alleged to have occurred as a result of the law of any jurisdiction regardless of whether a marriage license was issued.

ALA. CODE § 30-1-19.

328728 (S.D. Ala. Jan. 23, 2015), that Alabama's marriage laws prohibiting and refusing to recognize same-sex marriage violate the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In Searcy, this Court found that those laws restrict the Plaintiffs' fundamental marriage right and do not serve a compelling state interest.  Although the Plaintiffs in this case seek to marry in Alabama, rather than have their marriage in another state recognized in Alabama, the Court, as it previously did in issuing the preliminary injunctions against Attorney General Strange and Judge Don Davis, adopts the reasoning expressed in the Searcy case and finds that Alabama's laws violate the Plaintiffs' rights for the same reasons.  Alabama's marriage sanctity laws violate Plaintiffs' rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by prohibiting same-sex marriage.  Because this Court has continued to find that said laws are unconstitutional, the Court also finds that the new named Plaintiffs and the Plaintiff Class are likely to succeed on the merits of their claims.

Although Davis contends that he is entitled to qualified immunity and Eleventh Amendment Immunity, such immunities do not shield Davis from official capacity suits seeking declaratory and injunctive relief.[2]  Accordingly, Davis's

---

[2] Plaintiffs deny that Judge Davis is entitled to qualified immunity.  Regardless, even if Judge Davis is entitled to qualified immunity, qualified immunity does not bar declaratory or injunctive relief. D'Aguanno v. Gallagher, 50 F.3d 877, 879 (11th Cir. 1995) (citing Fortner v. Thomas, 983 F.2d 1024, 1029 (11th Cir. 1993)). Eleventh Amendment Immunity also does not protect Judge Davis from claims for "prospective injunctive relief in order to end a continuing violation of federal law." Tindol v. Alabama Dept. of Revenue, 2015 WL 350623, *10 (M.D. Ala. Jan. 23, 2015)

7

immunity claims do not alter this courts conclusion that the Plaintiffs are likely to succeed on the merits of their claims.

After considering the circumstances of this case and in light of the finding that the laws in question are unconstitutional, the Court finds that Plaintiffs have met the preliminary injunction factors.  Entry of an additional preliminary injunction order against the new Defendant and Defendant Class is warranted for the same reasons that the Court granted the previous preliminary injunctions.  The named Plaintiffs are likely to prevail and their inability to exercise their fundamental right to marry has caused them irreparable harm that outweighs any injury to defendant. See Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (holding that deprivation of constitutional rights "unquestionably constitutes irreparable harm.").  Because the issuance of marriage licenses is a purely ministerial act, Judge Davis, Judge Russell and the members of the Defendant Class have only a ministerial interest in issuing marriage licenses and would suffer little if any actual harm from the injunction.  Additionally, "it is always in the public interest to protect constitutional rights." Phelps–Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008).  The Court finds that Defendants have not

---

(quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996)); see also Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (holding that the Eleventh Amendment does not bar prospective injunctive relief against a state officer (as distinct from the State itself) on the theory that a state official engaged in unconstitutional actions is stripped of his official representative capacity.); Welch v. Estes, 2014 WL 7369424, *3 (N.D. Ala. Dec. 29, 2014) ("Although Eleventh Amendment immunity protects state officials from suits for money damages, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment." citations omitted).

shown why these conclusions should not apply to all of the named parties as well as the Plaintiff and Defendant Classes. The named Plaintiffs' claims are representative of the claims of the entire Plaintiff Class and the newly added Defendant and Defendant Class have the same defenses as Judge Davis.

Defendant Strange urges this Court to avoid unnecessary conflict. Strange concedes that this case may not fit squarely within the Rooker-Feldman doctrine because the plaintiffs are not parties to the state court proceedings, but argues that this Court, in its discretion, could abstain to avoid tension between state and federal courts. However, as Strange notes, Plaintiffs were not party to the state-court mandamus proceeding. As such, Plaintiffs are not bound by the conclusions of the Alabama Supreme Court. A mandamus proceeding in a state court against state officials to enforce a challenged statute does not bar injunctive relief in a United States district court. Hale v. Bimco Trading, 306 U.S. 375, 377-378, 59 S.Ct. 526, 527 (1939). Actions attacking the constitutionality of such statutes can be brought by parties who are strangers to the state court action. Id. The Hale Court held that strangers to a state court proceeding are not barred by the Anti-Injunction Statute, which was a precursor of the Anti-Injunction Act, from challenging the constitutionality of a statute in federal court when the statute is also under litigation in the state courts. Courts since then have agreed. See e.g. Chezem v. Beverly Enterprises-Texas, Inc., 66 F.3d 741, 742 (5th Cir. 1995) ("As the Supreme Court has taught, the Anti–Injunction Act has no application herein because Carriage House and its residents were neither parties nor privies of parties to the

state court action."); Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1020 (7th Cir. 1990) ("Only a party, or, what amounts to the same thing in contemplation of the law, one who is in privity with a party, is barred by the Anti–Injunction Act." Citations omitted); Munoz v. Imperial County, 667 F.2d 811 (9th Cir. 1982) (holding that federal plaintiffs were strangers to state-court proceedings and affirming entry of injunction against county officials).  Defendants have not shown that any abstention doctrine applies to this case. Moreover, this court's finding that Alabama's marriage sanctity laws were unconstitutional predates the state court mandamus action.

Davis also argues that an additional preliminary injunction would be in direct contradiction to the order issued by the Alabama Supreme Court in Ex parte State, 2015 WL 892752 (Ala. March 3, 2015).  It is true that if this Court grants the preliminary injunction the probate judges will be faced with complying with either Alabama's marriage laws that prohibit same-sex marriage as they have been directed by the Alabama Supreme Court or with complying with the United States Constitution as directed by this Court.³  However, the choice should be simple. Under the Supremacy Clause, the laws of the United States are "the supreme Law of the Land." U.S. CONST. art. VI, cl. 2.  As the Supreme Court very recently explained:

> It is apparent that this Clause creates a rule of decision: Courts "shall" regard the "Constitution," and all laws "made in Pursuance thereof," as "the supreme Law of the Land." They must not give effect to state laws

---

³ Probate Judges also have a third choice: they could choose to issue no marriage licenses and comply with both orders, as Judge Davis has reportedly done.

10

> that conflict with federal laws. *Gibbons v. Ogden*, 9 Wheat. 1, 210 (1824).
>
> * * * *
>
> For once a case or controversy properly comes before a court, judges are bound by federal law. Thus, a court may not convict a criminal defendant of violating a state law that federal law prohibits. See, *e.g.*, *Pennsylvania v. Nelson*, 350 U. S. 497, 499, 509 (1956). Similarly, a court may not hold a civil defendant liable under state law for conduct federal law requires. See *e.g., Mutual Pharmaceutical Co. v. Bartlett*, 570 U. S. ___, ___–___ (2013) (slip op., at 13– 14). And, as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted. *Ex parte Young*, 209 U. S. 123, 155–156 (1908).
>
> * * * *
>
> It is true enough that we have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law. See, *e.g., Osborn v. Bank of United States*, 9 Wheat. 738, 838–839, 844 (1824); *Ex parte Young, supra,* at 150–151 (citing *Davis v. Gray*, 16 Wall. 203, 220 (1873)).
>
> * * * *
>
> What our cases demonstrate is that, "in a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer." *Carroll v. Safford*, 3 How. 441, 463 (1845).
>
> The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England. See Jaffe & Henderson, Judicial Review and the Rule of Law: Historical Origins, 72 L. Q. Rev. 345 (1956).

<u>Armstrong v. Exceptional Child Center, Inc.</u>, --- S.Ct. ----, 2015 WL 1419423 at *3, 5-6 (March 31, 2015).  Judge Davis and the other probate judges cannot be held liable for violating Alabama state law when their conduct was required by the United States Constitution.

Defendant Strange argues that the members of the Defendant Class should be provided notice and an opportunity to respond before the Court considers issuing

11

a preliminary injunction against them. However, when monetary damages are not sought, notice is discretionary to classes certified under Rule 23(b)(1) or (b)(2), like the classes in this case. See FED. R. CIV. P. 23(c)(2)(A); Penson v. Terminal Transport Co., Inc., 634 F.2d 989, 993 (11th Cir. 1981). Courts in this District and others have previously issued a preliminary injunction concurrently with certifying a class or even prior to fully certifying a class. See e.g. Harris v. Graddick, 593 F.Supp. 128 (M.D. Ala. 1984) (certifying a plaintiff and defendant class concurrently with issuing a preliminary injunction); Kaiser v. County of Sacramento, 780 F.Supp. 1309, 1312 (E.D. Cal. 1991) (granting class-wide injunctive relief even though the court had only provisionally certified the class and had not yet fully addressed defendants class certification arguments); Thomas v. Johnston, 557 F.Supp 879, 916 n. 29 (W.D. Tex. 1983) ("It appears to be settled … that a district court may, in its discretion, award appropriate classwide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its general equity powers."). Here, Plaintiffs are not seeking monetary damages and the court has given Attorney General Strange and Judge Davis ample opportunity to address the preliminary injunction issues. The Court finds that no further briefing or evidentiary materials are necessary. Plaintiffs have clearly met their burden for issuance of a class-wide preliminary injunction against the enforcement of state marriage laws prohibiting same-sex marriage.

    Accordingly, the Court makes the following declaration:

It is **ORDERED** and **DECLARED** that ALA. CONST. art. I, § 36.03 (2006) and ALA. CODE 1975 § 30-1-19 are unconstitutional because they violate the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs' motion for preliminary injunction (Doc 76) is **GRANTED** and Judge Don Davis, Judge Tim Russell and the members of the Defendant Class are hereby **ENJOINED** from enforcing the Alabama laws which prohibit or fail to recognize same-sex marriage. If the named Plaintiffs or any members of the Plaintiff Class take all steps that are required in the normal course of business as a prerequisite to issuing a marriage license to opposite-sex couples, Judge Don Davis, Judge Tim Russell and the members of the Defendant Class may not deny them a license on the ground that they are same-sex couples or because it is prohibited by the Sanctity of Marriage Amendment and the Alabama Marriage Protection Act or by any other Alabama law or Order, including any injunction issued by the Alabama Supreme Court pertaining to same-sex marriage. This injunction binds all the officers, agents, servants and employees, and others in active concert or participation with Judge Don Davis, Judge Tim Russell or any of the members of the Defendant Class who would seek to enforce the marriage laws of Alabama which prohibit or fail to recognize same-sex marriage.

Plaintiffs are **ORDERED** to provide notice of this order and the order granting class certification to each member of the Defendant Class by mailing

copies of both orders by certified mail to each class member at his or her office.[4]

The notices should be mailed on or before May 26, 2015.

It is **FURTHER ORDERED** that because the issues raised by this case are subject to an imminent decision by the United States Supreme Court in <u>Obergefell v. Hodges</u> and related cases[5], the above preliminary injunction is **STAYED** until the Supreme Court issues its ruling.

**DONE** and **ORDERED** this 21st day of May, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE

---

[4] While the court is confident that all of the probate judges will be notified almost immediately of this order through the news media and other avenues, the Court finds formal notice to be prudent. Notice does not need to be mailed to Judge Davis or Judge Russell as they will receive electronic notice of these orders.

[5] These cases were argued on April 28, 2015, and a decision is expected by the end of this term.